FILED

2026 Mar-30  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  7:25-cv-00171-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Christopher Mitchell ("Mitchell") seeks review, pursuant to 42 U.S.C. § 405(g),

§ 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying his application for a period of disability and disability

insurance benefits ("DIB").  Mitchell timely pursued and exhausted his administrative remedies.

This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has

carefully considered the record and, for the reasons stated below, the Commissioner's decision is

**AFFIRMED**.

**I. Factual and Procedural History**

On May 24, 2022, Mitchell protectively filed an application for a period of disability and

DIB, alleging an onset date of July 8, 2021.  (Tr. 10).  The claim was initially denied on April 10,

2023, and denied again upon reconsideration on November 20, 2023.  (Tr. 10).  Mitchell timely

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 14).

requested a hearing before an Administrative Law Judge ("ALJ").  Following a June 11, 2024, hearing, the ALJ denied Mitchell's claim in an unfavorable decision dated June 25, 2024.  (Tr. 7–25).  Mitchell sought review by the Appeals Council, but it denied his request for review on December 9, 2024.  (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner.  On February 2, 2025, Mitchell initiated this action.  (Doc. 1).

Mitchell was 53 years old on his alleged onset date.  (Tr. 19).  Mitchell has past relevant work as a forklift operator and a coiler.  (Tr. 18–19).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks Supplemental Security Income ("SSI") or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3)  whether the claimant's impairment meets or equals an impairment listed by the Social Security Administration ("SSA");

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Mitchell had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12). At Step Two, the ALJ found that Mitchell has the following severe impairments: anxiety, major depressive disorder, and cognitive disorder. (Tr. 12). At Step Three, the ALJ found that Mitchell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to Step Four, the ALJ determined Mitchell's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Mitchell has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions; he can maintain attention and concentration for two-hour periods at a time; he can perform jobs that do not require interaction with the general public as part of the job duties; he can have occasional interaction with coworkers; he can

adapt to routine and infrequent workplace changes; he can make simple work-related decisions; and he can perform jobs that do not have a specific pace requirement.

(Tr. 15).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Mitchell is unable to perform his past relevant work. (Tr. 18–19). At Step Five, the ALJ found that, considering Mitchell's age, education, work experience, and RFC, Mitchell is able to perform jobs that exist in significant numbers in the national economy. (Tr. 19–20). Therefore, the ALJ determined Mitchell has not been under a disability from his alleged onset date through the date of the decision and denied Mitchell's claim. (Tr. 20).

### V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mitchell raises a single issue: whether the ALJ applied the correct legal standards in formulating his RFC. (Doc. 9 at 6). Specifically, Mitchell argues that the ALJ incorrectly found that Mitchell's statements concerning his subjective symptoms were not entirely consistent with the record. (*Id.* at 6–7). Mitchell's argument breaks down into two sub-issues: (1) whether the ALJ appropriately considered objective evidence consistent with Mitchell's allegations (*id.* at 7–

14); and (2) whether the ALJ correctly assessed Mitchell's reported daily activities (*id.* at 14–16). Each is discussed below.

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability.  *Id.*  However, the ALJ may still evaluate the intensity, persistence, and limiting effects of the claimant's symptoms in light of the record.  *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990).    Any finding that a claimant's statements about the intensity, persistence, or limiting effects of symptoms are inconsistent with the record must be supported by explicit and adequate reasons and substantial evidence.  *See Holt*, 921 F.2d at 1223; *Foote*, 67 F.3d at 1561–62; *Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1287 (11th Cir. 2025).  A clearly articulated evaluation of subjective symptoms will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029 at *3–10.  The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the

evidence. *See* 20 C.F.R. § 404.1529(c)(3)–(4); SSR 16-3p, 2016 WL 1119029 at *3–10. Consistent with SSR 16-3p, the ALJ evaluates a claimant's symptoms by examining their consistency with the objective medical evidence and other evidence of record. If an ALJ finds inconsistent a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). If that evaluation is inadequately explained, remand for further consideration may be required. *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Here, Mitchell reported in a function report that he could no longer perform his job due to an inability to focus. (Tr. 373). Mitchell also reported: no problems caring for personal needs; needing reminders to take medication on bad days; the ability to prepare simple meals, such as cereal, soup, or sandwiches; mowing, cleaning, and doing laundry once a week (albeit with encouragement occasionally required); shopping in stores; driving short distances; and handling finances and paying bills (assisted by his sister). (Tr. 374–76). He testified that his anxiety and depression cause difficulty thinking and knots in his stomach and that his medication helps with his symptoms, but not on bad days. (Tr. 183, 186). Mitchell testified that he ordinarily "just lay[s] around in the chair with the TV on." (Tr. 188). Mitchell stated that his memory was good but that he could not focus and could no longer read or play video games as a result. (Tr. 189). And Mitchell denied that he would be able to remember work-related information and follow through with tasks. (Tr. 189).

Applying the appropriate standard, the ALJ determined that Mitchell's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Mitchell's statement concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record.   (Tr. 16).   Thus, the ALJ accepted that Mitchell's impairments could produce symptoms of the type alleged, but found the record did not support the degree of limitation he claimed. The ALJ then justified that conclusion on the basis of the objective medical evidence and Mitchell's reported daily activities.

As for the objective medical evidence, the ALJ noted that Mitchell's depressive disorder appeared to begin in August 2021, when Mitchell reported cognitive symptoms (mood swings, social anxiety, difficulty concentrating, and short-term memory issues) after receiving a COVID-19 vaccination in July 2021.  (Tr. 16, 491).  That month, Mitchell was assessed with a cognitive disorder with mood swings present and underwent a neurological consultation.  (Tr. 16).  An MRI of Mitchell's brain was normal.  (Tr. 16, 481, 491).  Mitchell took a "mini mental state exam" and reported feeling good.  (Tr. 16, 523).  At a visit with his primary care physician the same month, Mitchell reported memory loss; his primary care physician noted mild difficulty in short-term recall but no long-term memory deficits.  (Tr. 16, 527).  Still in August 2021, Mitchell underwent EGD and reported not feeling like himself mentally since taking a COVID-19 vaccine in June 2021.  (Tr. 16, 498).  Mitchell reported that he had not had mental episodes before this point but that he experienced nausea, vomiting, and panic attacks; as a result of his symptoms, Mitchell stated that he was unable to work or play with his grandchildren.  (Tr. 16, 498).

In October 2021, Mitchell underwent an electroencephalogram ("EEG").  (Tr. 16, 491–92).  The results were unremarkable.  (*Id.*).  A second EEG in October 2021 and another relatively

benign mental status examination led the neurologist to conclude that Mitchell's symptoms were "more so consistent with a psychogenic etiology." (Tr. 843).

Mitchell began psychotherapy and psychiatric medication management in December 2021. (Tr. 17). On December 8, 2021, Mitchell's intake note indicated: "'I don't like not being able to work. I like a schedule.' – per patient." (Tr. 17, 645). Mitchell's mental status notations indicated that he had an anxious mood, preoccupied thought content, and distractable attention and concentration, but also fair insight, judgment, and impulse control, unremarkable thought process and perception, and intact memory. (Tr. 17, 645). Later that month, Mitchell had depressed mood, constricted affect, distractible attention and concentration, fair insight and judgment, and preoccupied thought content; notwithstanding, his memory findings were unremarkable. (Tr. 17, 648).

The ALJ also discussed various mental status examinations in 2022. At a January 2022 visit with his therapist, Mitchell reported "good" attention and concentration and wanting to return to work; his therapist indicated that he should "continue plan of care." (Tr. 17, 652). At a visit in February 2022, Mitchell reported "dramatically improved symptoms, improved clarity in thought, decreased symptoms"; the therapist again continued the plan of care. (Tr. 659). The next day, Mitchell reported wanting to return to work though not feeling 100% like himself. (Tr. 17, 662). In March 2022, Mitchell reported an unstable mood, loss of touch with the concept of time, self-isolation, and continued struggles with his daily routine. (Tr. 17, 664). Nevertheless, the plan remained "continue plan of care." (Tr. 664). In May 2022, Mitchell felt frustrated at not being able to get into a routine; still, he stated that his medications were working and that he wished to return to work "as soon as possible." (Tr. 17, 666). Later that month, Mitchell reported improved symptoms but still felt tiredness and loss of focus. (Tr. 17, 668). He felt less confident about

returning to work. (*Id.*). Still, the provider's assessment was "mildly improved from previous visit," and Mitchell's Seroquel prescription was reduced. (Tr. 668). And in June 2022, Mitchell again expressed a desire to return to work, though also reporting poor memory and focus. (Tr. 17, 671). Again, the plan remained "continue plan of care." (Tr. 671).

The ALJ concluded that these medical records showed that Mitchell's mental symptoms were "controlled with medication, therapy, and routine follow up visits." (Tr. 18). She also determined the limitations in the RFC accounted for whatever aspects of Mitchell's subjective complaints were supported by the objective medical evidence. (Tr. 18). Specifically, the ALJ found that the record was consistent with some symptoms, just not to the degree Mitchell claimed. (Tr. 18).

Countering this, Mitchell points to evidence in the record that supports his symptoms. (Doc. 9 at 7–13). This is essentially the same evidence that the ALJ cited in her opinion, just focusing more on Mitchell's subjective reports rather than on the objective medical findings. For instance, Mitchell notes "the Plaintiff's reports of debilitating symptoms including losing time, significant anxiety and the inability to focus and concentrate." (Doc. 9 at 12–13) (citing tr. 491, 498, 513, 587, 600, 604, 608, 645, 649, 668, 671). True enough, but Mitchell's *reports* of symptoms (i.e., the first prong of the pain standard) are not necessarily objective evidence that those symptoms caused the limitations he alleges (the pain standard's second prong), which is what the ALJ is tasked to find. *See* 20 C.F.R. § 404.1529(c)(1)-(4); SSR 16–3p, 2017 WL 5180304. The relevant question is whether the ALJ reasonably found those reports inconsistent with the objective medical evidence and other record evidence. The closest Mitchell gets to disputing the ALJ's analysis of the second pain standard prong is by pointing to "multiple mental status examinations show[ing] the Plaintiff to be anxious, agitated, with pressured speech,

distractable and preoccupied." (Doc. 9 at 13) (citing tr. 645, 648, 651, 655, 658, 661, 667, 670, 754). But the record also contains the unremarkable findings the ALJ noted, including—crucially—often unremarkable findings with respect to *memory*. The ALJ did not ignore the abnormal findings; rather, she concluded the overall record did not support limitations greater than those reflected in the RFC. The ALJ specifically acknowledged that there were conflicts in the treatment notes and resolved them by (1) weighing the evidence and (2) imposing some nonexertional restrictions on Mitchell's ability to work. (Tr. 13–15). That is not reversible error.

Mitchell also highlights the report of consultative examining psychologist Dr. June Nichols, Psy.D. (Doc. 9 at 12–14). Dr. Nichols administered the Wechsler Memory Scale, Fourth Edition (WMS-IV) and documented deficits in auditory memory, visual working memory, immediate memory, and delayed memory. (Tr. 755). Dr. Nichols found that Mitchell had significant limitations as a result of these deficits:

> He appeared able to understand and remember short and simple instructions, but would have difficulty remembering complex instructions to carry them out, especially if these were given verbally. His ability to sustain concentration and persist in a work related activity at a reasonable pace for an extended period of time is severely impaired. His ability to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public is severely impaired because of his anxiety levels and memory impairment. His ability to deal with normal pressures in a competitive work setting is severely impaired due to memory deficits as well as anxiety. He is able to manage his own funds with some assistance from his sisters.

(Tr. 756). The undersigned notes that Mitchell does not directly challenge the ALJ's decision to find Dr. Nichols' opinion unpersuasive. That said, the ALJ was not required to rely on Dr. Nichols' assessment in support of Mitchell's subjective symptoms because the ALJ found the severe restrictions it imposed inconsistent with other opinion evidence (reports of state agency physicians the ALJ found "mostly persuasive") and with the treatment notes discussed above. (Tr. 13–15,

18).  Nevertheless, the ALJ did impose some of the restrictions that Dr. Nichols advocated (i.e., limiting Mitchell to "understanding, remembering, and carrying out simple instructions" (tr. 13)). The ALJ's treatment of Dr. Nichols' opinion was not erroneous, as it pertains to Mitchell's subjective reports, particularly given Mitchell's failure to challenge the persuasiveness finding itself.

Finally, Mitchell takes issue with the ALJ's use of his reported daily activities to undermine his subjective complaints.  (Doc. 9 at 14–16).  Specifically, Mitchell argues that the ALJ overestimated his ability to engage in these daily activities by omitting qualifying limitations he placed on them.  (*Id.*).  But the ALJ's opinion omits nothing material.  For instance, the ALJ characterized Mitchell's report as stating that he "can prepare simple meals" (tr. 16), while Mitchell notes that those meals "consist of cereal, soup, and sandwiches" and that "it takes him longer to make meals because he tries to stay focused and he no longer prepares normal meals like he did before his illness."  (Doc. 9 at 15) (citing tr. 375).  Mitchell's added information provides little context that is not already included in "simple meals."  The ALJ clearly did not imply that Mitchell can prepare "normal meals."  Similarly, the ALJ specifically noted that Mitchell needs "encouragement" to perform housework (tr. 16), which Mitchell implies was omitted from the ALJ's opinion (doc. 9 at 15–16).  The remainder of the purported conflicts between the ALJ's description of Mitchell's daily activities and what Mitchell allegedly actually said fare no better. The court does not find that the ALJ's descriptions of Mitchell's daily activities were inconsistent with the caveats Mitchell placed on those activities.

The record is consistent with the ALJ's characterization of the evidence, regardless of whether other evidence might support the limitations Mitchell alleges.  The court's role is not to reweigh that evidence.  *Walden*, 672 F.2d at 838.  Here, the objective medical findings and

Mitchell's activities of daily living constitute substantial evidence supporting the ALJ's finding that Mitchell's alleged limitations were not fully consistent with the record.' Accordingly, the Commissioner's decision is due to be affirmed.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Mitchell's claim for a period of disability and DIB is **AFFIRMED**. A separate order will be entered.

DONE this 30th day of March, 2026.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE